Gregory GREGOR, M.D., Plaintiff,

v.

Edward J. DERWINSKI,
et al., Defendants.

No. 91–CV–6470L.

United States District Court,
W.D. New York.

Jan. 5, 1996.

Emmelyn Logan–Baldwin, Rochester, NY, for plaintiff.

Brian M. McCarthy, Asst. U.S. Atty., Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Gregory Gregor, M.D., commenced this action on November 12, 1991, against four defendants: the Department of Veterans' Affairs ("VA"); Edward J. Derwinski, the Secretary of the VA; Savita Puri, M.D., both individually and in her capacity as Chief of Staff at the VA Medical Center in Batavia, New York; and William H. Manley, both individually and in his capacity as Director of the Batavia VA Medical Center. Plaintiff seeks damages and equitable relief based on certain actions allegedly taken by defendants in connection with plaintiff's employment at the VA Rochester Outpatient Clinic ("ROPC" or "Clinic").

Plaintiff has moved to amend the complaint, to conform the pleadings to the proof, and for partial summary judgment. Defendants have moved to: dismiss the claims against defendants Puri and Manley; strike plaintiff's demands for a jury trial, compensatory and punitive damages, and attorney's fees; and dismiss the second cause of action on the ground that it fails to state a claim upon which relief can be granted.

## BACKGROUND

The complaint alleges that plaintiff, a physician, began working part-time at the VA Medical Center in Batavia in 1986, and that in December 1987 he was appointed to the position of Chief Medical Officer ("CMO") at the ROPC. Plaintiff alleges that he began having problems with defendant Puri, his immediate supervisor at the ROPC. In particular, the complaint alleges that Puri urged plaintiff to try to replace the older physicians at the Clinic with younger ones, and that plaintiff refused. Plaintiff asserts that Puri, angered by plaintiff's refusal, retaliated against him in various ways, such as by making unfounded criticisms of plaintiff's work. The complaint alleges that defendant Manley, who was Puri's supervisor, in concert with Puri, also falsely accused plaintiff of falsifying time cards on one occasion in 1991.

Plaintiff alleges that in September 1991, Puri gave him a false, unsatisfactory Proficiency Report, and at the same time advised plaintiff that plaintiff was being removed from his position as CMO and that he would be sent to the Batavia Medical Center for some unspecified duties. The complaint states that plaintiff "demanded his full reinstatement," but that defendants refused. Complaint ¶ 25.

Plaintiff contends that as a result of these actions, he became ill, and that in October 1991 his doctor placed him on medical leave. He alleges that defendants continued to harass him by demanding detailed information about his condition and threatening to put him on "absence without leave" status. Plaintiff has not returned to work since October 1991.

The complaint contains two causes of action. The first asserts a claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. Plaintiff contends that he was removed from his position at the ROPC because of his age (which was 57 in September 1991), and because he had opposed Puri's demands that he discriminate against other older physicians at the clinic.

In the second cause of action, plaintiff alleges that defendants violated his rights under the Veterans' Affairs Labor Relations Improvement Act, 38 U.S.C. §§ 7421 et seq., and VA personnel policies. He contends that these statutes and policies guarantee him certain procedural rights with respect to such matters as performance evaluations and adverse actions, and that defendants have denied him those rights.

Based on these claims, the complaint requests the following relief: a declaratory judgment that defendants' actions are unlawful; injunctive relief prohibiting defendants from violating plaintiff's rights, and reinstating plaintiff to the position that he would hold had it not been for defendants' actions; back and front pay and benefits; $1 million compensatory damages; punitive damages; and costs and attorney's fees.

In his motion to amend, filed on May 1, 1995, some three and one-half years after the

original complaint was filed, plaintiff seeks to add five additional causes of action: a claim under the free-speech clause of the First Amendment to the United States Constitution; a due process claim under the Fifth Amendment; claims under 42 U.S.C. §§ 1985(1) and 1985(3); and a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. Plaintiff also seeks to amend the Title 38 claim to reference 38 U.S.C. § 4110, the predecessor to the sections of Title 38 that currently set forth disciplinary procedures regarding VA employees. The motion to conform the pleadings to the proof is essentially just an alternative basis for adding the constitutional claims, as plaintiff contends that during the course of the litigation, defendants have proffered unconstitutional reasons for some of the allegedly adverse actions that they took against plaintiff.

Plaintiff's motion for summary judgment seeks summary judgment on his "claims that the defendants violated federal statutes and their own policies, rules and regulations implementing those statutes when they removed him from his position" as CMO. Plaintiff's Motion for Partial Summary Judgment at 1. In effect, then, plaintiff is seeking summary judgment on the current second cause of action.

Defendants move to dismiss the ADEA action against Puri and Manley on the ground that individual supervisors are not proper defendants in an ADEA action by a federal employee. Defendants also contend that since the allegations of the complaint relate only to actions taken by Puri and Manley in their official capacities, the second cause of action should be dismissed insofar as it is brought against Puri and Manley in their individual capacities.

Defendants also move for an order striking plaintiff's demand for a jury trial on the ground that there is no right to a jury trial in an ADEA action by a federal employee or under Title 38. Defendants also contend that compensatory and punitive damages and attorney's fees are not available in this action.

Defendants further ask that the second cause of action be dismissed. Defendants contend that the disciplinary procedures contained in 38 U.S.C. §§ 7461–7464 do not apply to plaintiff under the terms of the Veterans' Affairs Labor Relations Improvement Act.

## DISCUSSION

### I. Constitutional Claims

Defendants oppose plaintiff's motion to add claims under the Constitution. Defendants rely principally upon Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1982), in which the Supreme Court held that a federal employee cannot bring a civil rights action for damages against a government official where the employment relationship is governed by a comprehensive scheme that provides meaningful remedies for employees who have been unfairly disciplined. Defendants contend that such a scheme exists in this case under Title 38 and VA regulations, and that plaintiff has failed to utilize it.

Plaintiff contends that Bush should not bar his constitutional claims for two reasons. First, plaintiff notes that Bush dealt with an employee whose employment was governed by the Civil Service Reform Act ("CSRA"), whereas plaintiff is subject to different statutes applicable to VA employees. Second, plaintiff contends that defendants prevented him from utilizing whatever procedures would otherwise have been available to him by not informing him of his rights, and that any requests for administrative review would have been futile because of defendants' hostility toward him.

The fact that VA procedures governing employee discipline, grievances, and the like are not the same as those under the CSRA is not in itself dispositive of whether Bush applies to this case. Although the facts in Bush did involve an employee covered by the CSRA, the Court's reasoning addressed the general issue of "whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue." Bush, 462 U.S. at 388, 103 S.Ct. at 2416. The Court answered that question in the nega-

tive, holding that the existence of a comprehensive administrative remedial scheme precluded a *"Bivens"* action for damages directly under the Constitution.[1]

Several Courts of Appeals have addressed the applicability of *Bush* to claims by VA employees, and have found that the administrative remedial procedures in Title 38 and VA regulations bar a *Bivens*-type action. Some of these courts have also stated that while the VA administrative scheme is not as comprehensive as that under the CSRA, that is due to a deliberate policy choice by Congress, and it does not preclude application of *Bush* to VA cases.

In *Heaney v. United States Veterans Admin.*, 756 F.2d 1215 (5th Cir.1985), for example, which involved a VA physician whose surgical privileges had been revoked, the court, after summarizing the disciplinary process established pursuant to 38 U.S.C. § 4110 (the predecessor to the current disciplinary provisions in § 7461 *et seq.*), stated that the VA rules "were specifically designed to offer less protection than the CSRA." *Id.* at 1218. Noting, however, that "Congress 'wanted to give the [Veterans] Administration authority to employ or discharge without the usual time consuming and detailed service procedures,'" the court stated that "to allow a nonstatutory remedy here would have some effect tending to upset the balance between the interests of maintaining quality medical personnel and the protection of constitutional rights struck by Congress in creating the DMS."[2] *Id.* at 1219 (quoting *Orloff v. Cleland,* 708 F.2d 372 (9th Cir.1983)).

Rejecting the plaintiff's argument that *Bush* was limited to civil service employees, the court said that

we believe that *Bush*'s review of the history and details of the CSRA is best read to point out that Congress is capable of constructing an appropriate system of employee redress, more capable than are the courts.... Congress has chosen to exercise its special expertise and prerogative

by providing a less protective system for Veterans Administration medical personnel than for ordinary civil servants, and that is precisely the kind of decision that *Bush* acknowledges the legislature is in the better position to make than are the courts. *Id.* at 1222 n. 3.

The Tenth Circuit followed the reasoning of *Heaney* in *Franks v. Nimmo,* 796 F.2d 1230 (10th Cir.1986), in which a VA physician asserted constitutional claims against VA officials, alleging that they had improperly treated him as a probationary employee in conducting termination procedures, or in the alternative that they had failed to follow the proper procedures for termination of probationary employees. He sought damages for alleged deprivation of his rights to due process and free speech.

Affirming summary judgment in favor of the defendants, the court held that "the implied cause of action Dr. Franks seeks to assert is barred by the rationale applied in *Bush.*" *Id.* at 1238. The court rejected the plaintiff's argument that *Bush* should not apply because he was not a civil service employee, stating that "this argument is unpersuasive in view of the administrative procedures that Congress has provided to these [VA] employees, and the Court's conclusion in *Bush* that the administrative remedy need not fully compensate the employee to be exclusive." *Id.* at 1239.

The Ninth Circuit reached a similar conclusion in *Berry v. Hollander,* 925 F.2d 311 (9th Cir.1991), in which a VA pathologist alleged that the defendant VA employees had denied him his due process and free-speech rights in an alleged conspiracy to drive him from his job. The plaintiff contended that because the defendants' actions did not take place during a statutorily-authorized dismissal proceeding, where the alleged wrongs might have been remedied in the course of routine review, he had no administrative remedy, and therefore *Bush* did not apply to bar his claims.

---

1. *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2. "DMS" stands for the Department of Medicine and Surgery. According to defendants' brief, the present-day equivalent of the DMS is the Veterans Health Services and Research Administration ("VHS & RA").

Rejecting this argument, the court noted that the plaintiff was entitled to certain grievance and hearing procedures under VA regulations. The court stated that

[a]lthough these remedies do not guarantee full and independent compensation for constitutional violations suffered by a VA physician, they do indicate a congressionally-authorized and comprehensive remedial scheme sufficient to preclude additional forms of relief. "Where Congress has designed a program that provides what it considers adequate remedial mechanisms for constitutional violations, *Bivens* actions should not be implied." To allow Berry's action would eviscerate the Supreme Court's holdings in *Bush* and *Chilicky*,[3] which we cannot sanction.

*Id.* at 315–16 (quoting *Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir.1989)). *See also Maxey v. Kadrovach*, 890 F.2d 73, 75–76 (8th Cir.1989) (since plaintiff, a VA physician who claimed that he was discharged in violation of his constitutional rights to free speech and due process, could appeal agency decision to federal court under APA to gain redress, albeit limited in nature, plaintiff had no right to pursue constitutional tort claims against his supervisors), *cert. denied*, 495 U.S. 933, 110 S.Ct. 2176, 109 L.Ed.2d 505 (1990).

Defendants have submitted to the court excerpts from the VA Manual and supplements to the Manual that contain provisions dealing with employee discipline, grievance procedures, and other matters pertinent to this lawsuit. A review of those provisions confirms that, as the above cases stated, there is an elaborate administrative scheme in place governing the matters at issue here. These disciplinary and grievance regulations apply to medical privileges, proficiency ratings, reassignments, and so forth.

▮ Depending on the particular action in question, the regulations also provide the employee with specific detailed procedures for challenging adverse personnel actions. For actions that have a less significant impact on the employee, the employee's rights are more limited. For example, an employee who disagrees with his proficiency rating may submit his own comments for filing in his personnel folder. Defendants' Supplemental Mem. Ex. 5, ¶ 6.06(b). For more serious actions, however, the remedial procedures are commensurately broader. An employee who is dissatisfied with a reassignment that does not involve a reduction in rank or salary, for instance, may request that the action be reviewed by the Chief Medical Director. If the reassignment does involve a reduction in rank or salary, the employee may submit a grievance and demand a hearing. *Id.* Ex. 8, ¶ 11B.07(c). The grievance procedures also provide for administrative appeal rights. *Id.* Ex. 6 ¶ 15. Final agency decisions concerning disciplinary matters, if adverse to the employee, may also be subject to judicial review under the APA. *Maxey*, 890 F.2d at 75; *Heaney*, 756 F.2d at 1219; *Ward v. Derwinski*, 837 F.Supp. 517, 521 (W.D.N.Y.1992), *aff'd*, 22 F.3d 516 (2d Cir. 1994).

Plaintiff does not dispute the existence of this administrative scheme, but contends that the existence of these procedures should not bar his constitutional claims because defendants either conspired somehow to prevent him from learning what remedies were available to him or that their hostility to him would have rendered any attempt to use these remedies futile.

I find these arguments unpersuasive, for several reasons. First, there is no evidence to support plaintiff's claim that Karen Rodon, the Chief of Human Resources Management at Batavia, misled him about his rights or withheld information from him to prevent plaintiff from pursuing his administrative remedies. Plaintiff spoke to Rodon on several occasions around the time of his transfer, and Rodon provided him with portions of the VA Manual relating to grievances, disciplinary actions, etc.

Plaintiff stresses the fact that Rodon never gave him the entire manual, but there is nothing in the record to indicate that he

---

**3.** In *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Supreme Court held that the lack of a specific remedy for an alleged due process violation with respect to the termination of the plaintiffs' Social Security Disability benefits was an inadequate reason to imply a *Bivens* cause of action.

would have done anything differently if he had had the whole manual. Plaintiff has not identified any portions of the manual that he claims Rodon should have given him but did not.

Instead, the evidence is that there was a copy of the complete manual at Rochester, and that Rodon provided plaintiff with copies of the portions that related to the kinds of matters that plaintiff complained about. Rodon's handwritten notes summarizing her conversations with plaintiff, a copy of which plaintiff has submitted on this motion, also state that Rodon told plaintiff that he could review the manual and that if there were any parts of it that he wanted other than those she had already given him, Rodon would give him copies of those sections. Her notes state that plaintiff "did not want to do this," however. Plaintiff's Motion for Partial Summary Judgment Ex. E.

Plaintiff alleges that during Rodon's deposition, he "learned" for the first time that Rodon herself conspired with Puri and Manley to deny plaintiff his rights. Plaintiff's allegations in this regard are vague and conclusory, however, and do not support his claim that Rodon misled him about anything. Plaintiff states that he learned during Rodon's deposition that Rodon had been "involved with defendants Manley and Puri, assisting them in their efforts to deny [plaintiff] medical privileges, decentralize [his] position and remove [him] from [his] CMO position in such a manner that it would appear [he] would not have any right to appeal and/or grieve the adverse actions." Gregor Affidavit (Item 91) ¶ 9. The only evidence plaintiff cites, however, shows that Rodon merely had some contact with Puri, Manley, and some VA officials, concerning plaintiff's unsatisfactory proficiency rating and his reassignment to Batavia.

Mere contact with the defendants, or some involvement in the procedural aspects of plaintiff's reassignment, however, is too slim a reed upon which to base an assertion that Rodon conspired with others to deprive plaintiff of his rights. For one thing, as stated earlier, plaintiff has not shown specifically what Rodon did to frustrate plaintiff's rights. Even accepting plaintiff's assertion

that Rodon was somehow "involved" with Puri and Manley (whatever that may mean), plaintiff has not pointed to any act or omission on Rodon's part that prevented him from pursuing his rights.

Second, given her position as Chief of Human Resources Management, and Puri's and Manley's positions as Chief of Staff and Director of the Medical Center, it is hardly surprising that Rodon would have had some contacts with defendants about plaintiff. The evidence of Rodon's "involvement" with Puri and Manley simply reflects that various options were being considered in the aftermath of plaintiff's unsatisfactory proficiency rating.

Plaintiff's allegations of a plot to deny him his grievance and appeal rights are comparable to those asserted by the plaintiff in *Heaney*, who "allege[d] that he was deprived of the benefit of his rights under DMS regulations by the defendants' concealments and misrepresentations during the course of the disciplinary proceedings" that were at issue there. 756 F.2d at 1222. The Fifth Circuit held that such allegations did not remove the case from the rule enunciated in *Bush*. Stating that "[t]here is little doubt that many employees could cast their grievances in the form of allegations of conspiracies, frauds and misrepresentations, just as [plaintiff] has done here," the court noted that those alleged actions by the defendants did not alter the fact that the plaintiff, by his own admission, had administrative appeal rights. *Id.* The court stated that although the "procedures under the DMS system are not as elaborate as the procedures available under the CSRA, ... they do not deny a measure of relief to someone in Heaney's position," and therefore the plaintiff was "entitled to no more relief than [wa]s afforded him by his statutory and administrative remedies." *Id.*

Even if plaintiff was for a time unaware of the extent of his rights under Title 38 and the VA regulations, clearly he knew or should have known of those rights once he hired an attorney, which was shortly after he was informed of the decision to reassign him. Instead of pursuing those administrative remedies at that point, however, plaintiff quickly filed suit in federal court, bypassing

the administrative scheme for resolving such disputes. Among the allegations of the complaint, which was filed only about two months after the announcement of plaintiff's reassignment, and one month after he went on medical leave, are plaintiff's contentions that defendants had not afforded him his procedural rights under Title 38 and VA regulations. Thus, plaintiff's allegations that Rodon did not inform him about his rights do not warrant departing from the principles of *Bush* that bar these types of constitutional claims. Once plaintiff had an attorney there is no reason why the administrative process could not have been pursued with vigor.

Although plaintiff contends that he sought to pursue his administrative rights, the record does not support that allegation. With respect to his reassignment, which is the main action complained of here, plaintiff wrote a memorandum on September 19, 1991 addressed to "Chief of Staff" (presumably Puri) stating that he "insist[ed] that [he] be permitted to return to the Clinic" at Rochester. Plaintiff's Attachments to Statement of Facts Upon Which No Issue Exists, Tab 51. There is no statement in the memorandum that plaintiff intended to pursue any administrative grievance procedures, however; he simply "insist[ed]" that he be returned to Rochester.

In addition, as plaintiff himself states, he "immediately obtained a lawyer," who filed a notice of intent to sue on October 3, 1991, just two weeks after plaintiff sent his memorandum to Puri. The complaint was filed the following month. Under these circumstances, then, there was no reason for defendants to think that plaintiff, having chosen a judicial forum, intended to pursue any administrative procedures. Plaintiff himself does not appear to contend that he did try to file an administrative grievance, since according to him that would have been "futile" anyway.

■ Plaintiff's allegation that it would have been "futile" to attempt to pursue his administrative remedies, however, is pure conjecture and does not provide grounds for pursuing a judicial remedy. First, with respect to some of the matters complained of, the VA regulations provide only limited rights to the employee. For example, when an employee disagrees with his proficiency rating, he may submit written comments for filing in his personnel folder.[4] Just because the employee cannot go over his immediate supervisors' heads to challenge his proficiency rating at some higher level, however, does not amount to the kind of "futility" that might warrant a judicial remedy. In fact, precisely the opposite is true: the limited remedy afforded to VA employees in this regard reflects the policy choices underlying the comprehensive administrative scheme here. The whole point of *Bush* and its progeny dealing with VA employees is that Congress has struck a balance between employees' interests and the need to maintain efficiency and quality health care in the VA. As the court stated in *Heaney,* the mere fact that "complete relief was not afforded" under the regulatory scheme, from the affected employee's perspective, does not mean that the employee should be given a nonstatutory remedy through a *Bivens* action. *Id.* at 1222.

As to any alleged adverse actions taken against plaintiff, such actions were appealable. Whether plaintiff was subjected to an adverse action is disputed, and I do not reach that issue here. The point is that plaintiff could have sought to appeal any action that he believed was adverse, and if he felt that the appeal was wrongfully denied, he could have sought judicial review of the VA's actions. Plaintiff contends that such an appeal would have been futile because he would have had to appeal to Manley, but it appears from the regulations that there are further appeal rights beyond the employee's Medical Director. *See* Defendants' Supplemental Mem. Ex. 6 ¶ 8B(15), Ex. 7 § C. At any rate, a person aggrieved by a final agency action may seek judicial review under the APA. 5 U.S.C. § 702; *Ward,* 837 F.Supp.

---

4. Rodon's notes indicate that she advised plaintiff of this right. Plaintiff's Motion for Partial

Summary Judgment Ex. E.

517, 521.[5]

■ "[C]ourts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies." *Spagnola v. Mathis,* 859 F.2d 223, 228 (D.C.Cir.1988). Such a system is in place here. In short, there is simply no basis in this case for departing from the rule laid down in *Bush,* and applied by several Courts of Appeals to VA employees, that the existence of a comprehensive system providing for administrative remedies for plaintiff's complaints precludes plaintiff from asserting the constitutional claims that plaintiff seeks to add to his complaint. Plaintiff's decision to simply bypass the whole administrative scheme and attempt to bring a claim directly under the Constitution cannot be countenanced.

Therefore, plaintiff's motion to add these claims, and to conform the pleadings to the proof to add the allegations underlying these claims, must be denied.

## II. Section 1985 Claims

Plaintiff also seeks to add a claim under 42 U.S.C. § 1985(1) alleging that defendants conspired to prevent him from holding his CMO position or from discharging his duties. Another proposed cause of action under 42 U.S.C. § 1985(3) alleges that "defendants have conspired to deprive plaintiff and other persons similarly situated, employees of the VA over age 40, of their rights to VA employment."

I find that these claims are not cognizable in this action and that the motion to add them must therefore be denied.

■ Several courts have held that the *Bush* rationale applies equally to § 1985(1) claims by aggrieved federal employees who have comprehensive administrative remedies available. In *Jones v. TVA,* 948 F.2d 258,

265 (6th Cir.1991), for example, the court stated that the "[p]laintiff [wa]s a civil service employee, and as such ha[d] administrative remedies available under the CSRA. Section 1985(1) was not enacted to develop a forum within the courts whereby dissatisfied federal employees could seek resolution of internal personnel problems." The same conclusion was reached by the courts in *Spagnola v. Mathis,* 809 F.2d 16, 30 (D.C.Cir.1986) (§ 1985 claim precluded by CSRA), *vacated and reheard on other grounds,* 859 F.2d 223 (D.C.Cir.1988) (en banc), and in *McDowell v. Cheney,* 718 F.Supp. 1531, 1541–42 (M.D.Ga.1989) (federal civil service employee could not pursue § 1985 claim based on alleged violation of first amendment rights).

■ I agree with the reasoning of these cases. Section 1985 does not create any rights, but merely provides a cause of action for conspiracies to violate federal or state statutes. *Great American Federal Savings & Loan Assoc. v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). To the extent that the rights allegedly violated in this claim arise under the Constitution, plaintiff's proposed § 1985(1) claim is simply another way of stating his *Bivens* claims. To the extent that the rights are those under Title 38, that claim is governed by Title 38 and the regulations promulgated thereto. To allow this claim, then, would accomplish the evasion and subversion of this comprehensive scheme just as effectively as a *Bivens* action would.

■ The proposed § 1985(3) claim is equally flawed. The only class-based animus alleged in this claim related to VA employees over the age of forty, *i.e.,* those employees protected by the ADEA. It is well-settled, however, that the ADEA provides the exclusive remedy for age discrimination. *See, e.g., Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364, 1369 (4th Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989); *Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir.1983); *Paterson v. Weinberger,* 644

---

**5.** As will be explained below, plaintiff's proposed claim under the APA fails because he has not exhausted his administrative remedies. The availability of judicial review under the APA where the prerequisites for such review *have* been met nevertheless militates against allowing plaintiff to bypass the administrative scheme in place here.

F.2d 521 (5th Cir.1981). The ADEA therefore preempts claims for age discrimination under § 1985. *Tranello v. Frey*, 758 F.Supp. 841, 850 n. 3 (W.D.N.Y.1991), *aff'd*, 962 F.2d 244 (2d Cir.), *cert. denied*, 506 U.S. 1034, 113 S.Ct. 813, 121 L.Ed.2d 686 (1992).

### III.  APA Claim and Claim Under Title 38

Plaintiff also seeks to add a claim under the APA alleging that "[d]efendants have denied plaintiff procedures afforded by federal statute." The proposed amended complaint does not cite any particular statute as affording such procedures, but presumably it is referring to the sections of Title 38 dealing with employee discipline and grievance procedures. The second count of the present complaint alleges that plaintiff was denied procedures under the Veterans' Affairs Labor Relations Improvement Act of 1991, which is codified at 38 U.S.C. §§ 7421 *et seq.*

At a prior conference with counsel, I asked plaintiff's counsel to address in a supplemental brief whether the proposed APA claim is duplicative or superfluous in light of the existing Title 38 claim. Plaintiff contends that the APA provides an independent right of judicial review apart from Title 38.

Defendants have also moved to dismiss Count 2 of the present complaint on the ground that the procedures promulgated pursuant to § 7421 do not apply to plaintiff. Because the issues relating to the appropriateness of the APA claim and the merits of the Title 38 claim are in many respects intertwined, they will be discussed together.

The Veterans' Affairs Labor Relations Improvement Act ("the Act") was added to Title 38 on May 7, 1991. The Act provided that the Secretary for Veterans Affairs was to prescribe regulations to implement the grievance procedures set forth in the Act. Act May 7, 1991, P.L. 102–40, Title II, § 204, 105 Stat. 207. The Act further stated that "[w]ith respect to ... cases which are brought before the establishment of ... an administrative grievance procedure ..., such cases shall proceed in the same manner as

they would have if this Act had not been enacted." *Id.* § 205. In other words, the grievance procedures under the regulations implementing former § 4110 would apply to such cases.

■ The instant action was commenced on November 12, 1991. Defendants allege, and plaintiff does not deny, that new regulations implementing §§ 7461–7464 were not adopted until April 1992. Therefore, I find that the prior regulations apply to this case.

■ The present complaint, then, which cites §§ 7421 *et seq.*, relies on sections that are not applicable under the facts of this case. It is true that the proposed amended complaint does cite § 4110. However, before granting leave to amend, the court must consider whether the proposed cause of action under § 4110 states a claim. If not, the amendment would be futile, and leave to amendment should be denied. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Under the undisputed facts of this case, I find that plaintiff's proposed claim alleging that he was denied his rights under § 4110 cannot be sustained. The record shows that plaintiff did not attempt to utilize the procedural remedies available under that section and its accompanying regulations.

Preliminarily, I note that the proposed amended complaint asserts both a cause of action under § 4110, and a separate claim under the APA. The latter simply states that "[d]efendants have denied plaintiff procedures afforded by federal statute," without citing any particular statute.

■ I believe, however, that these two claims are redundant and that the only possible basis for this claim is the APA. Section 4110 contained no provision for judicial review. *Ward*, 837 F.Supp. at 520. Judicial review of actions taken pursuant to § 4110 is therefore available only under the APA, and only for "final decisions." *Id.* at 521.[6]

---

6. When Congress recodified the disciplinary provisions formerly set forth in § 4110, it added a provision allowing an employee "adversely affected by a final order or decision of a Disciplin-

ary Appeals Board (as reviewed by the Secretary) [to] obtain judicial review of the order or decision." 38 U.S.C. § 7462(f)(1). As stated, § 7462 does not apply in this case because the imple-

In requiring that the agency action be "final," however, "Congress effectively codified the doctrine of exhaustion of remedies in § 10(c)" of the APA, 5 U.S.C. § 704. *Darby v. Cisneros,* 509 U.S. 137, ——, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993). To be entitled to judicial review of an agency action under the APA, then, the aggrieved person must first have "exhausted all administrative remedies expressly prescribed by statute or agency rule ..." *Id.,* at ——, 113 S.Ct. at 2544.

Plaintiff has not done so here. The record clearly shows that plaintiff merely wrote a letter to Puri on September 19, 1991, insisting that he be returned to his former position in Rochester. She responded to him in a memorandum dated September 23, 1991, stating that she did "not anticipate you will return to the Rochester Clinic as Chief Medical Officer." Plaintiff's Reply Affidavit, Ex. 27.

As plaintiff states, he then "immediately obtained a lawyer," who filed a notice of intent to sue on October 3, 1991, and commenced this action on November 12, 1991. No further steps were taken by plaintiff or his attorney to seek administrative review of the decision to assign him to Batavia or of any other action which plaintiff believes was adverse.

As noted with respect to plaintiff's constitutional claims, the former regulations prescribed pursuant to § 4110 contain extensive provisions relating to administrative review of decisions affecting VA employees. In particular, Chapter 11 deals with reassignments, changes of duty assignments, and "details" to other assignments or facilities.

A "reassignment" is defined at § 11B.07(a)(1) as a "change from one organizational assignment to another at the same facility ...," which is not what occurred here. The regulations also state at § 11B.07(b) that a "change of duty assignment usually involves a change in work site or supervision ..." "Detail" is not defined, but the regulations state at § 11B.08(a) that "[d]etails of employees may be made when it is more practical than any other type of regular personnel action and will be limited to the shortest amount of time possible."

The regulations further provide at § 11B.07(c)(3) that "an employee who is dissatisfied with a reassignment or change of duty assignment involving a reduction in rank or salary,[7] may submit a grievance under the provisions of ... chapter 8" of the regulations. That chapter sets forth extensive provisions dealing with the initiation and handling of grievances, including administrative appeal rights. The regulations state that grievances should first be initiated informally within thirty days of the action complained of. If the employee remains dissatisfied after the informal stage, he can request a hearing within fifteen days of the response to his informal grievance. Under § 8B.15(a), the employee also has a right to appeal the decision rendered by the hearing officer, either to the Chief Medical Director, or, if the Chief Medical Director was the deciding official on the grievance, to the Administrator. Section 8B.15(e) states that the decision of the official on the appeal "will be final."

Arguably, plaintiff's September 19, 1991 letter to Puri constituted an informal grievance. After Puri responded, however, plaintiff did nothing further through administrative channels. Instead, he filed this lawsuit.

It is clear, therefore, that plaintiff did not exhaust his administrative remedies prior to instituting this action. There has thus been

menting regulations had not been established at the time of the events in question. Even if § 7462 did apply, however, the claim under that statute and the APA claim would be duplicative of each other. In that event, the APA claim could not survive because it applies only when "there is no other adequate remedy in a court ..." 5 U.S.C. § 704; *see Sun Enterprises, Ltd. v. Train,* 532 F.2d 280, 288 (2d Cir.1976) (availability of review under water-pollution statute precludes application of APA). As a practical matter, however, the language describing the cir-

cumstances under which agency action may be set aside under § 7462 is very close, and partly identical, to that in the APA, 5 U.S.C. § 706. Plaintiff's claim under § 7462 would therefore fail for the same reasons that his APA claim fails.

7. Defendants concede that once plaintiff began working in Batavia, he would have lost the "Service Chief" component of his special pay. Defendants' Statement of Facts in Dispute ¶ 20.

no final agency action for purposes of the APA.

As explained previously, plaintiff contends that it was futile for him to seek administrative review. He states that defendants always took the position that he had simply been "detailed" to Batavia and that he was therefore not entitled to a hearing. The regulations do not indicate that an employee may file a grievance to contest a detail. Plaintiff, of course, maintains that in reality he had been permanently transferred to Batavia and that defendants simply described this as a detail to deny him his rights.

The important point, however, is that plaintiff did not even attempt to pursue the matter administratively beyond his single letter to Puri. If he believed that his transfer was in fact permanent, he should have filed a grievance and requested a hearing. Whether the hearing was granted or not, only when the VA's action became final, could plaintiff have sought review of that action under the APA.

■ The essential defect with the proposed APA claim, then, is that while the gravamen of the claim is that plaintiff was denied procedures to which he was entitled, plaintiff never sought to avail himself of those procedures. Having failed to do so, plaintiff has not exhausted his administrative remedies, and there is no "final" agency action to review in this Court.

I also note that plaintiff complains about a number of other actions taken by defendants, such as late issuance of his performance evaluations, denial of staff privileges, and unfair, incorrect performance appraisals. Because these matters are simply alleged factually in the complaint as having occurred (sometimes with the vague assertion that they were "in violation of law and regulations," *see, e.g.,* Proposed Amended Complaint ¶ 44), and because the proposed Title 38 and APA claims simply allege that plaintiff's procedural rights have been violated, it is not clear whether plaintiff contends that these actions also entitled him to some procedural rights which he was denied. If those are separate claims, however, they also fail to state a claim under the facts here because again plaintiff has not exhausted his administrative

remedies. Plaintiff alleges that he sometimes expressed displeasure with some of these actions, and that he occasionally indicated an *intention* to fight them, but he has not shown that he actually sought to pursue any administrative remedies. Again, having not attempted to use any administrative procedures, plaintiff cannot seek review under the APA based on his assertion that those procedures were denied to him.

I conclude, therefore, that plaintiff's current claim under Title 38, and his proposed claims under Title 38 and the APA, cannot stand. Accordingly, the second cause of action must be dismissed, and the motions to amend the Title 38 claim, to add a claim under the APA, and for summary judgment on these claims, must be denied. The only remaining claim, then, is the claim under the ADEA.

## IV. Defendants' Motion to Dismiss the ADEA Claim Against Puri and Manley

■ Defendants move to dismiss the ADEA action against Puri and Manley. Defendants contend that in an ADEA action by a federal employee, the only appropriate defendant is the agency head, in his official capacity.

I agree. Although the Second Circuit has not spoken on this issue, the majority of courts which have addressed the issue have held that the agency head is the proper defendant. *See, e.g., Romain v. Shear,* 799 F.2d 1416, 1418 (9th Cir.), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987); *Ellis v. USPS,* 784 F.2d 835, 838 (7th Cir.1986); *Smith v. Office of Personnel Mgmt.,* 778 F.2d 258, 262 (5th Cir.1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986); *Healy v. USPS,* 677 F.Supp. 1284, 1288–89 (E.D.N.Y.1987). Although plaintiff contends that these cases are based on a flawed analysis of the ADEA, I am not persuaded by that argument.

■ In addition, to the extent that plaintiff seeks to hold Manley and Puri liable in their individual capacities, the action against them must be dismissed because individuals cannot be held liable under the ADEA. *See*

*Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 (4th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Dundas v. Convalescent Hospital for Children,* 92–CV–6005L, 1995 WL 813721 (W.D.N.Y. Mar. 9, 1995); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995) (individuals cannot be held liable under Title VII).

## V. Defendants' Motion to Strike Demands for Jury Trial and for Compensatory and Punitive Damages and Attorney's Fees

Defendants also move for an order striking plaintiff's demand for a jury trial on the ground that there is no right to a jury trial in an ADEA action by a federal employee or under Title 38. *See Lehman v. Nakshian,* 453 U.S. 156, 168–69, 101 S.Ct. 2698, 2705–06, 69 L.Ed.2d 548 (1981).

Plaintiff concedes that he is not entitled to a jury trial on the ADEA claim. *See* Plaintiff's Supplemental Brief (Item 89) at 1–2. Plaintiff's demand for a jury trial was based on his attempted assertion of civil-rights claims. Since the ADEA claim is the only claim remaining, defendant's motion is granted.

Defendants move to strike plaintiff's demands for compensatory and punitive damages and attorney's fees, on the ground that such damages and fees are not available in this action. *See Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 147–48 (2d Cir.1984); *Agugliaro v. Brooks Bros., Inc.,* 802 F.Supp. 956, 964 (S.D.N.Y.1992).

Again, plaintiff concedes that compensatory and punitive damages are not available under the ADEA, and states that those damages were sought only pursuant to plaintiff's other claims. *See* Plaintiff's Reply to Defendants' Memorandum of Law (Item 82) at 6. Defendants' motion to strike the demand for punitive and compensatory damages is therefore granted.

Defendants contend that attorney's fees are not available in an ADEA action by a federal employee against the government.

In support of this assertion, defendants rely on *Palmer v. GSA,* 787 F.2d 300 (8th Cir. 1986), in which a two-to-one majority held that because Congress, in enacting section 15 of the ADEA, 29 U.S.C. § 633a, which makes the ADEA applicable to federal employees, did not provide for attorney's fee awards, the court had no authority to award such fees to a federal employee plaintiff. Defendants also cite *Lewis v. Federal Prison Indus., Inc.,* 953 F.2d 1277, 1282 (11th Cir.1992), which reached the same conclusion.

Plaintiff argues that these cases were wrongly decided, and urges the court to follow the dissent in *Palmer,* in which Judge Heaney opined that attorney's fees should be allowed.

Although the Second Circuit has not spoken on this issue, "[t]he courts which have addressed the issue of whether a federal employee may recover fees for administrative efforts by counsel have uniformly held that such an award is not authorized under section 15 of the ADEA, 29 U.S.C. § 633a, and in consideration of the government's sovereign immunity." *Landry v. National Bd. of Med. Examiners,* No. 86–6819, 1987 WL 12772 *3, 1987 U.S.Dist. LEXIS 5360 *7 (E.D.Pa. June 19, 1987). "These cases make it clear that the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633a (ADEA) does not provide for an award of attorney fees in public sector cases." *Hicks v. Cheney,* No. 92–2123, 1994 WL 502646 *1, 1994 U.S.Dist. LEXIS 20348 *2, 65 Fair Empl.Prac.Cas. (BNA) 508 (W.D.Pa. June 29, 1994). *See also Edwards v. Shalala,* 846 F.Supp. 997, 1002 n. 8 (N.D.Ga.1994) ("Though liquidated damages and attorney's fees are provided for in the private-action portion of the ADEA, such relief is not available when proceeding against the federal government under § 633a"), *aff'd,* 64 F.3d 601 (11th Cir.1995). Although plaintiff cites some district court authority to the contrary, those cases were decided prior to *Palmer* and *Lewis.*

Plaintiff contends that fees should be allowed here because some courts have allowed attorney's fees in Title VII actions against the government. Plaintiff argues that the

reasoning of those cases is applicable here as well.

As the majority in *Palmer* pointed out, however, "when Title VII was amended to include [federal] employees, 42 U.S.C. § 2000e–16, express provision was made for the awarding of attorneys' fees, *id.* § 2000e–16(d). By contrast, when Congress amended the ADEA to include federal employees, section 15 contained no attorneys' fees provision even though section 15 was patterned in part on key provisions of the federal employees' section of Title VII." 787 F.2d at 302. In this regard, therefore, I do not believe that cases decided under Title VII are apposite to the case at bar.

■ The Supreme Court has cautioned that courts should not create an entitlement to attorney's fees absent express congressional authorization. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 260–62, 95 S.Ct. 1612, 1623–24, 44 L.Ed.2d 141 (1975). No such authorization exists here, and in accordance with the majority of courts that have addressed the issue, I find that an award of attorney's fees is not available in this action. Defendants' motion to strike the demand for attorney's fees is therefore granted.

### CONCLUSION

Plaintiff's motion (Item 68) to amend the complaint and to conform the pleadings to the proof is denied. Plaintiff's motion (Item 70) for partial summary judgment is denied.

Defendants' motion (Item 67) to dismiss all the claims against defendants Puri and Manley is granted. Defendants' motion to dismiss the second cause of action is granted, and the second cause of action is dismissed in its entirety. Defendants' motion to strike plaintiff's demands for a jury trial, compensatory and punitive damages, and attorney's fees, is granted.

IT IS SO ORDERED.