**Michael H. DONOVAN, Plaintiff,**

v.

**EASTERN MILK PRODUCERS COOPERATIVE ASSOCIATION, INC.; Milk Marketing, Inc.; Lewis Gardner; and Edwin Schoen, Defendants.**

No. 95–CV–571 (RSP/GJD).

United States District Court.
N.D. New York.

July 16, 1997.

Hancock & Estabrook, L.L.P., Syracuse, NY (David E. Peebles, Michael J. Sciotti, of counsel), for Plaintiff.

MacKenzie Smith Lewis Michell & Hughes, L.L.P., Syracuse, NY (Carter H. Strickland, of counsel), for Defendants.

## MEMORANDUM–DECISION & ORDER

POOLER, District Judge.

Plaintiff Michael H. Donovan brought this action claiming that defendants breached his employment contract and discharged him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* Defendants filed a motion for summary judgment and Donovan filed a cross-motion seeking to dismiss eleven of defendants' fifteen affirmative defenses. Dkt. Nos. 24, 27. Because genuine issues of material fact exist, I deny defendants' motion for summary judgment. However, I grant in part Donovan's motion and dismiss defendants' second, third, fourth, eighth and fourteenth affirmative defenses. Moreover, although plaintiff does not specifically address six affirmative defenses on which he seeks summary judgment dismissal, defendants' sixth, seventh, ninth, tenth, eleventh and twelfth affirmative defenses are dismissed to the extent consistent with my holding in Section II.B. herein.

## BACKGROUND

Defendant Eastern Milk Producers Cooperative Association, Inc. ("Eastern") is a cooperative association that assists its members in marketing and selling agricultural products. Dkt. No. 31, Ex. A, at 7. Defendant Milk Marketing, Inc. merged with Eastern in March 1995. Am. Compl. ¶ 12.[1] Eastern's eleven-member Board of Directors (the "Board") hired Donovan as its general manager in 1981 and renewed Donovan's contract five times. Am. Compl. ¶ 19; Def. Mem., Dkt. No. 26, at 1–2. Donovan's last contract covered his employment from October 1992 through March 1995. Am. Compl. Ex. D. According to defendants, Donovan's performance declined during his last contract

---

1. According to plaintiff's amended complaint Milk Marketing, Inc., "absorbed" Eastern's operations and employees. Am. Compl. ¶ 12. For convenience, I refer to Donovan's employer simply as Eastern.

period, and in October 1994 the Board voted unanimously to (1) not renegotiate Donovan's contract; (2) immediately relieve Donovan of his duties and responsibilities; and (3) appoint a new general manager. Dkt. No. 24, Ex. G.; Def. Mem., Dkt. No. 26, at 10–12. At the time of the Board's decision, Lewis Gardner was the President and Edwin Schoen was the Vice–President of the Board. Am. Compl. ¶¶ 15–16.

On April 27, 1995, Donovan filed his complaint against Eastern and Milk Marketing, Inc., alleging that the Board breached his employment contract and terminated him based on his age. Compl., Dkt. No. 1. On October 10, 1995, Donovan filed an amended complaint adding defendants Gardner and Schoen. Am. Compl., Dkt. No. 10.

## DISCUSSION

### I. Legal Standard

Summary judgment shall enter if, when viewing the evidence in the light most favorable to the nonmovant, the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the movant satisfies this initial burden, then the "burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir.1993) (citation omitted). The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In short, the nonmovant must demonstrate to the court that issues of fact exist that must be decided by a factfinder because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990) (citation omitted).

### II. Defendants' Motion for Summary Judgment

#### A. Age Discrimination

In their motion for summary judgment, defendants argue that Donovan failed to raise genuine issues of material fact with respect to his age discrimination claim. Specifically, defendants argue that they terminated Donovan's employment for legitimate, non-discriminatory business reasons. Donovan responds that direct and circumstantial evidence establishes an inference of discrimination sufficient to withstand defendants' motion.

Donovan's ADEA claim is governed by the "burden shifting McDonnell Douglas–Burdine framework for analyzing pretext claims."[2] *Equal Employment Opportunity Commission v. Ethan Allen, Inc.*, 44 F.3d 116, 119 (2d Cir.1994) (citations omitted). Accordingly, Donovan first must establish "(1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994) (quotation and citation omitted). Donovan's burden in establishing this prima facie case is modest. *Id.* at 109. Defendants concede the first and third elements but maintain that Donovan failed to establish that he was qualified for his general manager position or that an inference of discrimination can be drawn from his termination.[3] Def. Mem., Dkt. No. 26, at 14 n. 19.

---

**2.** Because I find that Donovan survives summary judgment under the McDonnell Douglas–Burdine framework, I decline the parties' invitation to engage in a *Price Waterhouse* mixed-motive analysis. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 246, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989).

**3.** Defendants contend that Donovan's inadequate job performance during his last contract period

is evidence that he was not qualified for the job. However, Donovan only need establish that he possessed the "basic skills necessary for performance of [the] job." *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 409 (2d Cir.), *cert. denied*, 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991) (quotation and citation omitted). The Board renewed Donovan's contract as general manager on five separate occasions, and from

However, because they recognize Donovan's modest burden at this stage, defendants correctly focus on the second and third steps of the McDonnell Douglas–Burdine analysis. *Id.*

Because Donovan's "evidentiary proffer meets the McDonnell Douglas test for a prima facie case, the burden of production to offer a legitimate non-discriminatory reason for the discharge falls on the employer, while the burden of persuasion on the whole case remains with the plaintiff." *Cook v. Arrowsmith Shelburne, Inc., KDT Industries,* 69 F.3d 1235, 1239 (2d Cir.1995). Donovan acknowledged that defendants articulated legitimate, nondiscriminatory reasons for his discharge.[4] Pl. Mem., Dkt. No. 30, at 15. Having offered legitimate, nondiscriminatory reasons for the adverse employment action the court's factual inquiry "proceeds to a new level of specificity," requiring that Donovan "produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by [defendants are] false, *and* that more likely than not [his] age was the real reason for the discharge." *Viola v. Philips Med. Sys.,* 42 F.3d 712, 717 (2d Cir.1994) (emphasis in original) (citing *Woroski,* 31 F.3d at 110). Donovan relies on four alleged incidents as circumstantial proof of age discrimination: (1) defendant Gardner's statement in 1993 that Donovan and other staff members close to retirement lacked vision; (2) defendant Schoen's 1993 note to Donovan expressing Schoen's belief that Eastern should prepare

for the future by acquiring a "young aggressive assistant" general manager; (3) a document allegedly from Gardner or Schoen containing a similar reference to a "younger-aggressive assistant" general manager, and (4) Schoen's deposition testimony in which he stated that the Board's executive committee "wanted a younger, aggressive" general manager. Donovan Aff., Dkt. No. 28, ¶¶ 56, 59, 60, 61.

The defendants argue that, notwithstanding these alleged incidents the alleged discriminatory animus of Gardner and Schoen cannot be imputed to the eleven-member Board's unanimous decision to discharge Donovan. *See* Def. Mem., Dkt. No. 26, at 17–18. I disagree. Donovan produced sufficient evidence to create a question of fact whether the alleged discriminatory animus of Gardner and Schoen infected the Board's decision making process. In his deposition, Gardner testified that when John Siglow, the employee whom the Board hoped to retain and who ultimately replaced Donovan as general manager, indicated his desire to leave Eastern, Gardner initiated conversations in the fall of 1994 with the Board about not renewing Donovan's contract. Gardner Dep., Dkt. No. 39, at 58–59. When Siglow decided to leave Eastern, Gardner telephoned the officers of the Board and specifically discussed terminating Donovan's contract. *Id.* at 63–64. The officers then contacted other members of the Board to discuss Donovan's termination. *Id.*

---

1990 through 1994 Eastern evaluated Donovan's work as above satisfactory or satisfactory. Donovan Aff., Dkt. No. 28, ¶ 42. Donovan thus established that he was qualified for the position of general manager. Defendants also argue that Donovan failed to establish that his discharge occurred under discriminatory circumstances. The Board replaced Donovan, who was 57 years old at the time of his discharge, with a 41-year-old new general manager. *Id.* ¶¶ 3–4. Age discrimination can be inferred when defendants hire "a replacement [worker] [] substantially younger than the plaintiff," even it the replacement also is within the protected class. *O'Connor v. Consolidated Coin Caterers Corp.,* — U.S. —, —, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). I find that the sixteen-year age difference between Donovan and his replacement, coupled with evidence that the Board was looking for a "younger" general manager, adequately

establish an inference of age discrimination. *See* Schoen Dep., Dkt. No. 35, Ex. CC at 107.

4. The legitimate reasons defendants offered include: (1) Donovan's failure to adequately follow the Board's directive to become more aggressive in seeking business opportunities, Gardner Dep., Dkt. No. 39, at 54; (2) Donovan's unsuccessful efforts to expand membership and recruit other cooperatives, Thomson Dep., Dkt. No. 37, at 27–28; (3) Donovan's failure to timely submit a proposal to acquire the Valley Farms milk processing plant, *id.* at 30; (4) Donovan's failure to effectively pursue opportunities with Cortland Bulk Milk Producers Cooperative, Inc. and Dietrich's Milk Products, Inc., Gardner Dep., Dkt. No. 39, at 40; (5) Donovan's disrespect for the Board, *id.* at 42; and (6) Donovan's inability to convince a key employee to remain with Eastern, *id.* at 64.

at 64–66. On the day that the Board met and voted to end Donovan's affiliation with Eastern, the Board conducted its conversations about Donovan in executive session, and no minutes of the Board's conversations exist. *Id.* at 92, 94. Schoen testified that the Board members "all kept in contact with each other and we all kind of understood where we were all coming from." Schoen Dep., Dkt. No. 35, Ex. CC, at 36. Schoen also testified that while considering whether to hire Siglow to replace Donovan, the Executive Committee of the Board met with Siglow. In response to questioning by plaintiff's counsel, Schoen described part of that meeting as follows:

Q. What was said during that meeting?

A. We listened specifically to what John [Siglow]—He wanted it right up front that he did not want to take Mr. Donovan's job, and we at the executive committee made it perfectly clear whether John took it or didn't take it, Mr. Donovan was history, and we wanted a younger, aggressive—I shouldn't say young. We wanted an aggressive fellow who was looking at the possibility of doing new things, creating new activities.

Q. So when you said younger, that was just a slip, you weren't looking for someone necessarily younger?

A. Not younger, no. That was a slip, I'm sorry. For some reason I put the terms of youth with being aggressive. That's not the case.

Q. Generally speaking though, do you find that to be true?

A. From my perspective, I see—I look at children and how creative they are, and it's a constant term, being creative with young children, so I see just being creative, being more aggressive.

Q. So you do in some way associate aggressiveness and creativity with youth?

A. I think in some ways, but not in all ways.

*Id.* at 107–108.

I am persuaded that the "cumulative weight of circumstantial evidence" creates a factual issue as to whether the alleged impermissible motives of Gardner and Schoen tainted the Board's decision making process. *See Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir.1991); *see also DeWald v. Amsterdam Hous. Auth.,* 823 F.Supp. 94, 104–05 (N.D.N.Y.1993) (finding a factual dispute as to whether the alleged discriminatory animus of one board member infected the decision making process of other board members). Defendants' motion for summary judgment therefore is denied.

## B. Liability of Gardner and Schoen

### 1. Individual Liability under the ADEA

■ Donovan sued defendants Gardner and Schoen in both their official and individual capacities under the ADEA. The district courts of this circuit are in accord that individual liability does not attach under this statute, and I therefore dismiss Donovan's individual liability claims premised on the ADEA. *See Gregor v. Derwinski,* 911 F.Supp. 643, 654 (W.D.N.Y.1996) (holding that "individuals cannot be held liable under the ADEA"); *see also Houston v. Fidelity,* 1997 WL 97838, at *8 (S.D.N.Y.1997).

### 2. Official Capacity under the ADEA

■ Defendants also seek dismissal of Donovan's ADEA claims against Gardner and Schoen in their official capacities because Donovan failed to name Gardner and Schoen in his EEOC charge. Def. Mem., Dkt. No. 26, at 23. As a general rule, a defendant must be named in the EEOC complaint. *See Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir.1991). However, because I find that Gardner and Schoen fall within the "identity of interest" exception, I deny defendants' motion. In considering the identity of interest exception, I must consider:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to in-

clude the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Id.* at 209–10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)).

The first factor weighs against Donovan because Gardner and Schoen, as President and Vice–President of the Board, were ascertainable as individuals to include in the EEOC charge. However, "no single factor is decisive," and I find that the remaining factors weigh against Gardner and Schoen. *See Goyette v. DCA Advertising Inc.*, 830 F.Supp. 737, 748 (S.D.N.Y.1993) (quoting *Glus*, 629 F.2d at 251). As to the second factor, I find that the Board's interest and that of its President and Vice–President are identical in that "had there been any conciliatory efforts made by the EEOC, it would have been redundant for [Gardner and Schoen] to have had [their] own representative at the negotiations." *Id.* As to the third factor, because the EEOC failed to take action on the charges, Gardner and Schoen "did not suffer any actual prejudice." *Id.* Finally, by the terms of Donovan's employment contract, the Board controlled the terms and conditions of his employment and it was not unreasonable for Donovan to name only the Board in his EEOC charge.

### 3. Individual Liability under New York Human Rights Law

Donovan claimed that defendants Gardner and Schoen violated Section 296(6) of the New York Human Rights Law Section 296(6) states that: "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so." N.Y. Exec. Law § 296(6). Individual liability attaches under Section 296(6) if the employee exercises control over the terms and conditions of the plaintiff's employment. *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d

659, 473 N.E.2d 11 (1984) (*per curiam*). More precisely, individual liability attaches if the defendant had "the power to hire and fire plaintiff." *Storr v. Anderson Sch.*, 919 F.Supp. 144, 148 (S.D.N.Y.1996).

Defendants argue that because Gardner and Schoen lacked independent authority to make employment decisions, they cannot be held individually liable under Section 296(6). However, as President and Vice–President of the Board, Gardner and Schoen were voting members of an entity that controlled the terms and conditions of Donovan's employment. Donovan claimed that Gardner's and Schoen's discriminatory animus infected the decision making process of the Board. Therefore, Donovan has alleged that the individual defendants "actually participate[d] in the conduct giving rise to [the] discrimination claim." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995); *see also Poulsen v. City of North Tonawanda*, 811 F.Supp. 884, 900 (W.D.N.Y.1993). Donovan has raised a triable issue of fact as to this issue, and defendants' motion for summary judgment is denied.

### C. Breach of Contract

Eastern removed Donovan as its general manager on October 18, 1994. However, Donovan continued to receive pay and other benefits under his contract until its expiration on March 31, 1995. Am. Compl., Dkt. No. 10, ¶¶ 33–35; Donovan Dep., Dkt. No. 38, at 138. In his complaint, Donovan alleged that the Board breached his contract when they removed him as general manager. Am. Compl., Dkt. No. 10, ¶ 34. Defendants moved for summary judgment on this claim, arguing that (1) Donovan did not have a contractual right to continued employment and (2) because Eastern satisfied the terms of the contract Donovan is unable to show any damages. Def. Mem., Dkt. No. 26, at 22. Donovan responded that his contract guaranteed him employment at a specific job and that he was damaged because he could not collect the full performance-based bonus to which the contract entitled him.[5] Pl. Mem., Dkt. No. 30, at 33–34.

Under New York law, if "an executive employee, is engaged to fill a particular

---

**5.** The incentive language contained in the con-    tract provided:

position, any material change in his duties, or significant reduction in rank, may constitute a breach of his employment agreement." *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 10, 330 N.Y.S.2d 33, 280 N.E.2d 867 (1972); *see also Harden v. Warner Amex Cable Communications Inc.*, 642 F.Supp. 1080, 1095 (S.D.N.Y.1986) (holding that plaintiff "must show that there was a material change in his duties or a significant reduction in rank"). Here, I find that a reasonable jury could find that the Board's actions caused a material change in Donovan's duties. Moreover, Donovan presented a triable issue of fact concerning his inability to affect the incentive provision in his contract. *See Zeumer v. Fire Burglary Instruments, Inc.*, 210 A.D.2d 318, 619 N.Y.S.2d 782 (2d Dep't 1994) (affirming trial court's finding that defendants breached plaintiffs' employment contract by changing plaintiff's position and preventing him from earning contractual incentive bonuses).

### III. Plaintiff's Cross Motion for Summary Judgment

In their answer to Donovan's amended complaint, defendants posited fifteen affirmative defenses. Answer, Dkt. No. 12, ¶¶ 36–50. In his cross motion for summary judgment, Donovan sought to dismiss defendants' second, third, fourth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth and fourteenth affirmative defenses.[6] In response, defendants specifically argued that their second, third and fourth affirmative defenses should not be dismissed. Def. Reply Mem., Dkt. No. 33, at 14–15.

### A. Second, Third, and Fourth Affirmative Defenses

■ Defendants' second, third, and fourth affirmative defenses alleged that Don-

ovan (1) waived the right to challenge defendants' employment decision; (2) is estopped from challenging the decision; and (3) consented to defendants' employment decision. *See* Answer, Dkt. No. 12, ¶¶ 37, 38, 39. Defendants premised these defenses on Donovan's assertions to the Board that if it was unhappy with his performance then it should terminate his employment. Def. Reply, Dkt. No. 33, at 4.

In order for a court to enforce a waiver of an age discrimination claim, the waiver must be written and knowingly and voluntarily made and must meet specific statutory requirements such as (1) referring to the ADEA; (2) advising the individual to consult with an attorney; and (3) providing a grace period in which to consider signing the waiver. 29 U.S.C. § 626(f)(1)(A), (B), (E), (F). The statements made by Donovan do not meet this standard. Defendants do not dispute that Donovan's statements fail to constitute a formal waiver, but argue that "having invited the Board to terminate his employment, [he] cannot now be heard to complain that the Board should not have done so." Def. Reply Mem., Dkt. No. 33, at 14. I disagree. If Donovan is successful in proving that discriminatory animus infected the Board's decision, the fact that he challenged the Board to terminate him does not preclude a finding in his favor. Plaintiff's motion for summary judgment as to defendants' second, third, and fourth affirmative defenses is granted.

### B. Eighth and Fourteenth Affirmative Defenses.

Defendants' eighth affirmative defense is that any damages Donovan suffered were the

---

The President, Vice–President and Treasurer of Eastern shall meet with Donovan no later than September 30 of each year during the Term of this Agreement for the purpose of reviewing with Donovan his performance as General Manager of Eastern during the preceding fiscal year. Immediately after such meeting, such officers shall recommend to the Board of Directors of Eastern the amount of bonus compensation, if any, the Board of Directors should authorize Donovan to receive based upon his performance. In reviewing Dono-

van's performance and/or authorizing such bonus compensation, it is intended that consideration will be given as to the extent to which Donovan's performance contributed to Eastern's profitability and stability during such prior or fiscal year.
Am. Compl., Dkt. No. 10, Ex. D at 3.

**6.** My previous discussion addresses the merits of several of these defenses concerning the liability of Gardner and Schoen.

result of his own culpable conduct, and their fourteenth affirmative defense is that Donovan failed to make a reasonable inquiry into the accuracy of his allegations. Answer, Dkt. No. 12, ¶¶ 43, 49. Defendants did not oppose Donovan's motion for summary judgment as to these defenses, and I therefore grant Donovan's motion.

### CONCLUSION

For the foregoing reasons, it hereby is

**ORDERED**, that defendants' motion for summary judgment is **DENIED**, and

**ORDERED**, that plaintiff's motion for summary judgment as to defendants' second, third, fourth, eighth, and fourteenth affirmative defenses is **GRANTED**, and it is further

**ORDERED**, that plaintiff's motion for summary judgment as to defendants' sixth, seventh, ninth, tenth, eleventh and twelfth affirmative defenses is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**