Marion **HEINEMANN**, Plaintiff,

v.

**HOWE & RUSLING, et al.,** Defendants.

No. 02–CV–6211L.

United States District Court,
W.D. New York.

April 29, 2003.

J. Nelson Thomas, Dolin, Thomas & Solomon LLP, Rochester, NY, for Plaintiff.

Thomas S. D'Antonio, Ward, Norris, Heller & Reidy, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

Plaintiff, Marion Heinemann, commenced this action on April 12, 2002, alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* the Equal Pay Act, 29 U.S.C. § 206(d); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.;* the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.;* and the New York Human Rights Law ("HRL"), N.Y. Exec. L. § 296 *et seq.* Plaintiff filed an amended complaint on July 23, 2002, adding a claim under Chapter 63 of the Rochester, New York Municipal Code.[1]

Plaintiff's claims all relate to alleged discrimination that occurred in connection with her former employment at defendant Howe & Rusling, Inc. ("H & R"), an investment management firm located in Rochester, where plaintiff worked from January 1999 until she was terminated in the Fall of 2001. During plaintiff's employment, H & R was wholly owned by H & R Aquisition Corp., a majority of whose stock was in turn owned by defendant Laidlaw Global Corporation ("Laidlaw"). Defendant Third Security, LLC purchased Laidlaw's ownership interest in H & R Aquisition from Laidlaw in December 2001, after plaintiff had been terminated.

---

1. The amended complaint was filed, without leave of court, the day after defendants filed their answers in this action. This may be of no moment, however, since plaintiff has filed a motion for leave to file a second amended complaint, which asserts the same claims as the first amended complaint, but adds additional factual allegations. Defendant's response to that motion is due on May 7, 2003.

In addition to H & R, Laidlaw and Third Security, plaintiff has sued five individuals (collectively, "the individual defendants"), all of whom were members of H & R's Executive Committee ("the Committee"), which made the decision to terminate plaintiff: Thomas G. Rusling, the president of H & R; Robert B. Wolf, a senior Vice President of H & R; Craig D. Cairns, also a senior Vice President; Barbara MacInnes, who is H & R's operations manager and head of Human Resources; and John K. Bleyaert, H & R's Chief Investment Officer.

By stipulation and order entered on June 28, 2002, plaintiff has withdrawn all her claims against the individual defendants except for her claim under the HRL. The individual defendants have now moved for summary judgment on that one remaining claim against them. Defendants request that the Court either dismiss that claim on the merits, or in the alternative, decline to exercise supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367(c).

### FACTUAL BACKGROUND

As defendants' motion presents a relatively narrow issue of law concerning individual liability under the HRL, only those facts relevant to the motion will be set forth here. In short, plaintiff alleges that she began working for H & R as a senior portfolio manager in early 1999. Plaintiff alleges that H & R discriminated against her in various ways during her employment.

On October 13, 2001, the Committee (which was made up of the five individual defendants) voted unanimously to terminate plaintiff's employment. Plaintiff was terminated effective November 9, 2001. Plaintiff alleges that her termination was motivated by unlawful discrimination, and in retaliation for her prior complaints of discrimination.

The complaint alleges that "[m]embers of the Executive Committee were responsible for all personnel decisions at the firm, with the approval and concurrence of Laidlaw," Amended Complaint ¶ 19, and that each individual defendant "personally participated in the discrimination against plaintiff." Amended Complaint ¶¶ 10, 12, 14, 16, 18. Defendants agree that the Committee "was responsible for, and made . . . all personnel decisions," including the decision to terminate plaintiff. Affidavit of Thomas G. Rusling (Docket # 5) ¶ 10. Defendants contend, however, that no single member of the Committee, acting alone, had the power to hire or fire employees. Rusling Aff. ¶ 11.[2]

### DISCUSSION

■ The HRL provides, in Exec. L. § 296(1), that it is unlawful for an "employer" to discriminate against an employee because of her membership in a class protected under the statute. In *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984), the New York Court of Appeals examined what is meant by the term "employer" in the HRL and held that "[a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination . . . under New York's Human Rights Law . . . if he is not shown to have any ownership interest or any power to do more than

---

**2.** While plaintiff states that "[b]ecause of a lack of discovery, plaintiff does not have sufficient information to respond to this statement" about each individual defendant's lack of authority to hire and fire, Plaintiff's Rule 56 Statement at 3, there appears to be no dispute here that each individual defendant did vote to terminate plaintiff; indeed, that is the basis for plaintiff's claims against each of them, insofar as her termination is concerned.

carry out personnel decisions made by others." Following *Patrowich,* courts have held that an individual who *has* significant supervisory authority, such as the power to hire and fire employees, *can be* held liable under the HRL. *See, e.g., Cirillo v. Muss Dev. Co.,* 278 A.D.2d 353, 355, 717 N.Y.S.2d 638 (2d Dep't 2000) (assuming the truth of plaintiff's allegations, "she has sufficiently alleged that Markowitz had the authority to make personnel decisions and salary and benefit determinations. If, in fact, Markowitz had the 'power to do more than carry out personnel decisions made by others,' he may be subject to liability under the Human Rights Law") (citing *Patrowich* and § 296); *Lapidus v. New York City Chapter of the New York State Ass'n For Retarded Children, Inc.,* 118 A.D.2d 122, 131, 504 N.Y.S.2d 629 (1st Dep't 1986) (lower court erred in dismissing HRL claim against individual defendant who "was personally charged with hiring and firing and thus did more than carry out personnel decisions made by others"); *Samide v. Roman Catholic Diocese of Brooklyn,* 194 Misc.2d 561, 754 N.Y.S.2d 164 (Sup.Ct. Queens County 2003) (denying motion to dismiss HRL claim against individual, since plaintiff sufficiently pleaded that individual defendant had power to do more than carry out personnel decisions made by others).

■ In the case at bar, plaintiff alleges that each of the individual defendants directly participated in the alleged discrimination against her by, *inter alia,* voting to terminate her. Defendants contend that this activity is insufficient to give rise to individual liability because none of the Committee members had any authority in this regard except as a group, acting jointly. In other words, defendants argue that because the Committee members only acted collectively, they did not individually have the requisite power to make employment decisions affecting plaintiff.

I find this argument unpersuasive. *Patrowich* did not hold that an individual must have power to make employment decisions *alone,* and, if *Patrowich* were so interpreted, it would be all too easy for individuals with supervisory authority to avoid liability under the HRL simply by acting in concert.

Notably, *Patrowich* spoke of whether an individual defendant has the "power to do more than *carry out* personnel decisions *made by others.*" In the instant case, under no reasonable interpretation of the facts could the individual defendants be said to have simply "carried out" decisions made by "others." Rather, *they* made the decision to terminate plaintiff's employment. That they did so as a group does not alter that fact.

The court in *Donovan v. Eastern Milk Producers Co-operative Ass'n, Inc.,* 971 F.Supp. 674, 680 (N.D.N.Y.1997), rejected a similar argument. There, the plaintiff had been hired by the defendant cooperative association to serve as its general manager. Eventually, the association's eleven-member board of directors voted unanimously to relieve the plaintiff of his duties and appoint a new general manager. The plaintiff then sued the association, as well as two individuals-the president and vice-president of the board of directors-alleging that he had been terminated on account of his age.

Although the district court dismissed the plaintiff's ADEA claim against the two individuals, the court denied the defendants' motion to dismiss the plaintiff's HRL claim against them. The individual defendants argued that because they "lacked independent authority to make employment decisions," they were not subject to liability under the HRL. The court, however, noting that the individual defendants "were voting members of an entity that controlled the terms and conditions of Dono-

van's employment," held that the plaintiff had sufficiently alleged their personal participation in the conduct giving rise to plaintiff's HRL claim to pursue a claim against them in their individual capacities. *Id.* at 680. I find that reasoning persuasive, and fully applicable here.

■ Defendants also contend that, even if the Court finds that plaintiff has stated a viable HRL claim against the individual defendants, the Court should decline to exercise its supplemental jurisdiction under 28 U.S.C. § 1367(c). That statute provides that

> [t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [which provides for supplemental jurisdiction over state claims that "form part of the same case or controversy" as the claims over which the district court has original jurisdiction] if-
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Defendants assert that subsections (1) and (4) apply here. As to (1), they contend that the issue of individual liability under the HRL is an "unsettled" area of New York law. The basis for that assertion relates to the Second Circuit's decision in *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), in which the court held that "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the HRL." The court held that liability in such circumstances could be imposed under § 296(6), which makes it unlawful to aid or abet a violation of the HRL.

Since *Tomka* was decided, some New York state courts have criticized its holding, *see, e.g., Trovato v. Air Express Int'l*, 238 A.D.2d 333, 334, 655 N.Y.S.2d 656 (2d Dep't 1997) (rejecting *Tomka* and concluding that finding "a co-employee liable as an aider and abetter would ignore the statutory and legal authority limiting the parties who may be sued for employment discrimination"); *accord Foley v. Mobil Chem. Co.*, 170 Misc.2d 1, 11–12, 647 N.Y.S.2d 374 (Sup.Ct. Monroe County 1996), while others have agreed with it; *see, e.g., Murphy v. ERA United Realty*, 251 A.D.2d 469, 471–73, 674 N.Y.S.2d 415 (2d Dep't 1998) (citing *Tomka* with approval, and distinguishing *Trovato* ); *Steadman v. Sinclair*, 223 A.D.2d 392, 393, 636 N.Y.S.2d 325 (1st Dep't 1996) (citing *Tomka* for the proposition that a defendant may be held individually liable for retaliation as an aider and abettor under N.Y. Executive Law § 296(6)).

Because of this lack of unanimity among the state courts with respect to *Tomka*'s interpretation of § 296(6), some district courts have declined to exercise their supplemental jurisdiction over HRL claims against individuals based on an aiding-and-abetting theory. *See, e.g., Hockeson v. New York State Office of Gen'l Servs.*, 188 F.Supp.2d 215, 223 (N.D.N.Y.2002); *Houston v. Fidelity*, No. 95 Civ. 7764, 1997 WL 97838, *10 (S.D.N.Y.1997) ("Given the unsettled state of the law, it is possible that the parties would have a 'surer-footed' reading of the extent of aiding and abetting liability in state court"); *but see Duviella v. Counseling Service of Eastern Dist. of New York*, No. 00–CV–2424, 2001 WL 1776158, *17 n. 15 (E.D.N.Y. Nov.20,

2001) (rejecting defendants' request to decline to exercise supplemental jurisdiction over § 296(6) claim, and observing that "*Tomka* is the current law in this Circuit and therefore binding on lower federal courts"), *aff'd,* 52 Fed.Appx. 152 (2d Cir. 2002); *Gemerek v. Buffalo Sewer Auth.,* No. 99–CV–0879, 2001 WL 603694, *3 (W.D.N.Y. May 23, 2001) ("this Court will not decline to exercise supplemental jurisdiction over plaintiff's HRL claim against Hazzan at this time because the issue is not made novel or complex simply because there is a split on individual liability under section 296(6) in the Appellate Division, especially in light of the decision of the Second Circuit Court of Appeals in *Tomka* ").

I need not decide, however, whether the law with respect to § 296(6) is so unsettled as to present a novel or complex issue of state law that would warrant my declining to exercise jurisdiction over plaintiff's HRL claim against the individual defendants, for the simple reason that plaintiff has stated a facially valid claim against those defendants under § 296(1), which concerns *direct* discrimination by the "employer." Unlike *Tomka*-where there was no evidence indicating that the individual defendants had the power to hire or fire the plaintiff, 66 F.3d at 1317-the undisputed facts here show that the Committee had extensive powers to make employment decisions affecting plaintiff, including the power to fire her. The facts presented here, therefore, viewed in the light most favorable to plaintiff, tend to show not that the individual defendants aided and abetted unlawful discrimination by the employer, but that they themselves, acting, in effect, *as* plaintiff's employer, committed the discriminatory acts giving rise to plaintiff's claim. If so, then defendants may be held liable under § 296(1). *See Murphy,* 251 A.D.2d at 472, 674 N.Y.S.2d 415 ("By alleging that the owner-employer engaged in acts of unlawful discrimination, the plaintiff unquestionably stated a cause of action against the owner-employer. It is the *employer's* participation in the discriminatory practice which serves as the predicate for the imposition of liability on *others* for aiding and abetting") (citing *Patrowich* ) (emphasis added); *Wait v. Beck's North America, Inc.,* 241 F.Supp.2d 172, 179 (N.D.N.Y.2003) (although "individual liability is sharply circumscribed under section 296(1)," plaintiff's complaint "alleged[d] that [plaintiff's supervisor] had the authority to hire and fire. . . . This allegation is sufficient to withstand defendant's motion to dismiss"); *Dunson v. Tri-Maintenance & Contractors, Inc.,* 171 F.Supp.2d 103, 114 (E.D.N.Y.2001) ("The Second Circuit has held that liability under § 296(6) is distinguishable from direct liability under § 296(1), in that a defendant need *not* be the employer, *or* hold authority to hire or fire the plaintiff, in order to be found liable for aiding and abetting pursuant to provision § 296(6)") (citing *Tomka,* 66 F.3d at 1317) (emphasis added); *Chamblee v. Harris & Harris, Inc.,* 154 F.Supp.2d 670, 676–77 (S.D.N.Y.2001) ("if an employee does have sufficient authority and power to do more than simply carry out personnel decisions made by others, he can be held liable under [§ 296(1) of] the HRL"); *Pellei v. International Planned Parenthood Federation/Western Hemisphere Region, Inc.,* No. 96 Civ. 7014, 1999 WL 787753, *15–16 (S.D.N.Y. Sept.30, 1999) (plaintiff stated claim under § 296(1) against two individuals, one of whom had the power to hire and fire employees, and the other of whom supervised and controlled employee work schedules and conditions of employment for plaintiff, since economic-reality test was satisfied as to those two defendants); *see also Turner v. Olympic Regional Dev. Auth.,* 89 F.Supp.2d 241, 243 (N.D.N.Y.2000) (individual defendant who had authority to fire plaintiff "remains potentially liable under

the HRL as an employer and for aiding and abetting ORDA's alleged violations provided he actually participated in the violations") (footnote omitted).

■ In *Patrowich,* the Court of Appeals adopted an "economic reality" test for determining whether a defendant constitutes the plaintiff's "employer" for purposes of § 296(1). Under that test, which was drawn largely from a line of Fair Labor Standards Act cases, four factors are of particular relevance: whether the defendant (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir.1984) (cited with approval in *Patrowich,* 63 N.Y.2d at 544, 483 N.Y.S.2d 659, 473 N.E.2d 11). No single factor is dispositive, for "economic reality is based on all the circumstances." *Herman v. RSR Sec. Servs., Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999).

■ In the case at bar, there is clearly enough evidence at least to overcome defendants' motion for summary judgment on this issue. In his affidavit, Rusling states: "The Executive Committee of Howe and Rusling had managerial responsibility for the overall operation of the firm. The Executive Committee was responsible for, and made (generally on a consensus basis), *all* personnel decisions, especially with respect to professional employees like plaintiff." Rusling Aff. ¶ 10 (emphasis added).

Although these statements do not expressly address whether the Committee determined employees' salaries or maintained employment records, they certainly suggest that the Committee's authority over employment matters was broad indeed. At the very least, I find that the evidence in this regard is sufficient at the

summary judgment stage to allow plaintiff to go forward against the individual defendants under § 296(1). Any doubts about the proper interpretation of § 296(6) are therefore irrelevant to my determination of whether to exercise jurisdiction over plaintiff's HRL claim. *See Chamblee,* 154 F.Supp.2d at 677 ("The issue that divides the [state] courts [concerning § 296(6)] is not present in this case. Defendant Artis may be held personally liable under 296(1) ... because as the General Manager ..., ... Artis clearly was empowered to do more than simply carry out others' personnel decisions, and was the source of all of the alleged discriminatory conduct") (footnote omitted).

In addition, defendants ignore the fact that plaintiff alleges that at least some of the individual defendants also participated in discrimination against plaintiff in other ways. For example, she alleges that defendant Wolf at one point informed plaintiff that he always asked H & R's clients if they had a "problem" working with women before he would assign those clients' accounts to plaintiff. Amended Complaint ¶ 39. She alleges that on another occasion she overheard Rusling ask why a new female client had not been assigned to plaintiff, stating that all female accounts were supposed to go to plaintiff. Amended Complaint ¶ 52. Aside from these allegations concerning particular defendants, it is simply unclear at this point to what extent, if any, each individual defendant was responsible for the alleged discriminatory treatment of plaintiff, particularly with respect to the assignment of accounts. Since, by defendants' own admission, the Committee made "all personnel decisions," plaintiff may be able to show that the individual defendants each had a hand in the alleged discrimination. Because discovery has only recently commenced in this case, it would be premature to conclude that plaintiff cannot establish that

the individuals participated in the alleged discrimination, either directly as her employer, or based on an aiding-and-abetting theory.[3]

In that regard, I also note that, even if plaintiff were limited to an aiding-and-abetting claim under § 296(6), I would exercise my supplemental jurisdiction over her HRL claim. *Tomka* is the law in this circuit, and simply because the state courts have not been in complete agreement on whether *Tomka* was correctly decided does not make the issue of individual liability "novel or complex." *Gemerek*, 2001 WL 603694, *3. *See Turner*, 89 F.Supp.2d at 243 n. 2 ("until it is reversed, *Tomka* controls in this Court").

I am equally unpersuaded by defendants' assertion that the Court should decline to exercise jurisdiction over plaintiff's HRL claims because of the risk of jury confusion. Defendants contend that this risk would arise from having individual-liability claims present under the HRL, but not in plaintiff's federal claims, from the availability of punitive damages under federal, but not state law, and other differences between plaintiff's federal and state claims. As the court stated in *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172, 1179 (S.D.N.Y.1992), "[j]uries are instructed regularly on different theories of relief, even when only federal claims are present. The mere existence of one difference in legal theory does not create a sufficient likelihood of jury confusion to justify dismissing plaintiffs' HRL claims." *See also Liscio v. Warren*, 901 F.2d 274, 277 (2d Cir.1990) ("the risk of jury confusion [from trying state and federal claims together]

can be reduced by 'judicious use of special verdicts and carefully drawn instructions' ") (quoting *Miller v. Lovett*, 879 F.2d 1066, 1073 (2d Cir.1989)).[4]  Certainly this risk is not so great or unmanageable as to warrant the risk of inconsistent verdicts and the expenditure of judicial resources that would be incurred if plaintiff were required to proceed in both federal and state court, which could result if this Court were to decline to exercise supplemental jurisdiction over plaintiff's HRL claims.

## CONCLUSION

The motion for summary judgment by defendants Rusling, Wolf, Cairns, MacInnes, and Bleyaert (Docket # 5) is denied.

IT IS SO ORDERED.

---

**3.** Although, as stated, the individuals may be subject to liability as plaintiff's employer under § 296(1) with respect to her termination, that does not necessarily mean that plaintiff will be unable to show that they aided and abetted discrimination against her in other ways during her employment.

**4.** My holding makes it unnecessary for me to decide whether the individuals' alleged ownership interest in H & R suffices to make them subject to liability under § 296(1).