OPINION OF THE COURT
Charles Edward Ramos, J.
This action involves the television game show “Who Wants to be a Millionaire” (the Game). The plaintiff, Robert Gelbman *404 (Gelbman), commenced this action for breach of contract, and negligent and intentional infliction of severe emotional distress after being eliminated from the game for incorrectly answering a question which, according to Gelbman, was ambiguous. The defendants, Valleycrest Productions, Ltd. (Valleycrest), the Walt Disney Company (Disney) and American Broadcasting Company (ABC), have moved, pursuant to CPLR 3211 (a) (1), (5) and (7), for dismissal on the grounds that plaintiff has failed to state a cause of action, signed a release indemnifying the defendants from any suit by the plaintiff, and upon documentary evidence.
Background
On August 18, 1999, Gelbman was a contestant on the Game. It consists of players answering a series of questions for money. The player is given a question and four possible correct answers and the player must decide which of the four possibilities he or she believes is the correct answer. Each correct answer raises the level of monetary award, i.e., the first question is worth $100, the second $200, the third $300, the fourth $500 and so on. If the player answers 15 questions correctly the prize is $1,000,000. The game ends if any question is answered incorrectly and depending on how many questions the player has answered correctly he or she may win nothing, $1,000 or $32,000. The player may stop at any time prior to answering a question incorrectly, in which case he or she wins the amount assigned to the last correctly answered question.
Gelbman answered the first nine questions correctly. The tenth question he was asked, “Beginning in January, which of the following signs of the Zodiac comes last?” The possible answers were “A) Aquarius, B) Aries, C) Leo, or D) Scorpio.” Plaintiff answered (A) Aquarius, while defendants indicated that the correct answer was (D) Scorpio and Gelbman was eliminated from the game and awarded $1,000. Gelbman maintains that the question was ambiguous. Gelbman felt that the question did not clearly state whether they were asking which sign came last in the calendar year or the Zodiac year. Since the Zodiac year begins with the sign Aries, Aquarius would be that last sign. The producers of the show maintained that the question was not ambiguous and declined to change their decision despite Gelbman’s complaints.
Before the show, Gelbman signed two documents, the contest release and eligibility form (release) on August 17, 1999, and the official rules (rules) on August 18, 1999, the day of the taping. Both the release and the rules expressly state that the *405 decisions concerning all matters of the game, including questions and answers, of the producers and ABC are final. The release also holds Valleycrest and all others involved in the production of “Who Wants to be a Millionaire” harmless from “any and all claims arising out of injury and damage to [plaintiff] in any way resulting from [plaintiff’s] participation in the Contest and/or Program.” (Release ]} 13.)
Gelbman claims that by not being allowed to continue in the game after incorrectly answering an ambiguous question with two possible answers, the defendants have breached the contract and damaged Gelbman and by their actions have caused him emotional distress. The defendants allege that there is no contract, and that in the alternative no breach has occurred since the terms of the release bar the action. In addition, they allege that Gelbman’s claim of emotional distress is also barred by the release and does not meet the standard for such an action.
Discussion
In deciding whether to dismiss a complaint under CPLR 3211 (a) (7), if the facts as stated in the complaint are sufficient to infer a cause of action, the court may not dismiss for failure of the complainant to state it (Leon v Martinez, 84 NY2d 83, 88 [1994]). The court must accept the facts as alleged by the plaintiff as true (Morone v Morone, 50 NY2d 481, 484 [1980]). However, even though the pleaded facts are presumed true and accorded the most favorable inference, allegations consisting of bare legal conclusions, as well as facts that are inherently incredible or flatly contradicted by documentary evidence, will not be given such consideration (Marraccini v Bertelsmann, 221 AD2d 95, 98 [3d Dept 1996]). In suing for breach of contract, the plaintiff must allege an agreement, a breach of the agreement and damages. This court finds that the plaintiff has failed to make such a showing.
The defendants assert that there was no contract. However, the traditional elements of a contact — offer, acceptance and consideration — have been sufficiently pleaded. The defendants offer potential contestants on their show a chance to win large sums of money in return for their appearance on the show. In addition, the defendants provide round trip air fare to New York, free lodging and a per diem allowance. Gelbman accepted this offer by applying to be a contestant and successfully fulfilling all the screening requirements. Undoubtedly, Gelbman received consideration having an objective value. Defendants received some value as well. Without contestants there is no *406 show, and therefore it is arguably consideration. The plaintiff has sufficiently demonstrated a contract for purposes of this motion.
Plaintiff has failed to specify what terms of the agreement were breached. Essentially, he alleges that the defendants breached the contract by asking, in the course of the contest, a question that was “ambiguous and misleading.” However, both the release and the rules contain clauses in which defendants reserve final judgment in all matters concerning the contest. The release states, “VCP’s and ABC Broadcast Standards and Practices decisions on all discretionary matters (including the playing of the game and all decisions relative thereto) shall be final.” (Release 7.) The rules state, “By entering, each player accepts and agrees to be bound by these rule[s] and by the decisions of ABC Broadcast Standards and Practices and Valley-crest Productions, Ltd. which are final and binding on all matters relating to all aspects of the game, including questions and answers.” (Rules 5 [emphasis added].)
Generally, courts have upheld contract clauses reserving final judgment of the rules and results of a contest to the producers of the contest. (See, Johnson v New York Daily News, 97 AD2d 458 [2d Dept 1983] [“the decision of the contest judges should not be interfered with by the courts”].) Further, the possibility of two correct answers to a question does not invalidate a clause reserving final judgment to the producers of a contest. In Furgiele v Disabled Am. Veterans Serv. Found. (116 F Supp 375 [SD NY 1952]), a contestant in a word puzzle game alleged that the producers of the contest had failed to follow their own rules in not accepting his alternate answers to the puzzle in question which would have, if allowed, been the high score. As in the instant case, the contest rules included a. clause stating that, “Each contestant * * * agrees to be bound by the rules and instructions and in any event with the decisions of the DAV Service Foundation and/or its committee on awards on any of the matters affecting the contest.” (Id. at 376 [internal quotation marks omitted].) The court declined to consider whether the plaintiff’s answers were a correct alternative answer. “The whole matter comes down to this. Plaintiff is dissatisfied with defendant’s solution of the puzzles. On that issue in accord with the contract between the parties, plaintiff may not succeed.” (Id.) Having a question with two possible answers is not a breach of any provision of the contract that plaintiff signed. In fact, the plaintiffs main complaint seeks to penalize the defendants for enforcing an express provision of the *407 contract which gives them sole discretion to decide which is the correct answer.
The plaintiff maintains that the clause conferring final judgment to the defendants is not applicable because the defendants’ actions were in bad faith. (See, Johnson v New York Daily News, 97 AD2d at 458 [finding that the rules will be enforced unless there has been a fraud, intentional or gross mistake, irregularity or lack of good faith]; Furgiele v Disabled Am. Veterans Serv. Found., 116 F Supp at 376.) Plaintiff argues that the defendants have acted in bad faith by propounding an unfair contest question with two correct answers, and failing to judge the answers impartially, rationally and nonarbitrarily. However, this argument is no different in essence than the argument made by the plaintiff in Furgiele, where the plaintiff contended “that defendant acted arbitrarily and in violation of the rules of the contest in not accepting [his] suggested words.” (Id.) The court held that the plaintiff had failed to support this contention. Plaintiff has stated in his complaint and affidavit that both his and the defendants’ answers were correct. Therefore, the point of contention is that the plaintiff disagrees with the defendants’ answer and, as stated above, that is not a breach of the contract that the plaintiff signed.
Plaintiff further alleges that the contract itself was one of adhesion and therefore inherently unfair. Adhesion is found where the party seeking to enforce the contract used high pressure tactics or deceptive language in the contract, where there is inequality of bargaining power between the parties and the contract inflicts substantive unfairness on the weaker party. (Matter of Ball [SFX Broadcasting], 236 AD2d 158, 161 [3d Dept 1997].) Unfairness can be construed if the terms of the contract are not within the reasonable expectations of the party, or because its terms are unduly oppressive, unconscionable, or contrary to public policy. (Availl, Inc. v Ryder Sys., 913 F Supp 826, 831 [SD NY 1996].)
Assuming, arguendo, that there was unfair bargaining power, in that the plaintiff was told to sign the contract or they would get someone else, without a showing of unfairness there is no argument for adhesion. Plaintiff contends that the contract was unfair because he was not given a complete set of the rules to sign until just before the taping began. He claims that there were initially three pages missing, including the page with the clause reserving final judgment on answers and questions to the defendants, and that when pointed out to the producers of the show, the producers explained that they forgot *408 to copy the backside of the pages and subsequently provided them, telling contestants, including plaintiff, to sign the papers immediately or they would be replaced.
Because of this, plaintiff claims that he did not have time to read the rules before the contest due to the high pressure tactics of the defendants. However, the clause reserving final judgment to the defendants is contained in both the rules and the release. The plaintiff signed the release the day before the contest. At the very top of the release is the caption, “do not sign this until you have read it.” In addition, the release contains the language, “I have been given ample opportunity to read, and have carefully read, this entire Agreement.” Plaintiff cannot claim, in the face of this documentary evidence, that he did not have the opportunity to read the clause in the contract reserving the right of final judgment to the defendants. Therefore, he cannot claim that said term was not within reasonable expectation.
There is no reasonable argument that the contract was oppressive, unconscionable or contrary to public policy. Plaintiff was given free round trip tickets for two to New York, free travel and accommodations during his stay, a per diem spending allowance and the opportunity to win vast sums of money (of which he won $1,000) and all the plaintiff was to give in return was to appear on the show (which is something he clearly wanted to do).
As for the claims for emotional distress, they are entirely without merit. Plaintiff has made no showing that a disagreement over the answer to a game show question and disqualifying the plaintiff from moving on in the show even begins to approach the rigorous and difficult to satisfy requirement of “extreme and outrageous conduct,” which must be to such a degree as to go beyond all possible bounds of decency. (Howell v New York Post Co., 81 NY2d 115, 122 [1993].) Additionally, the defendants owed no duty to the plaintiff other than the contract and therefore there is no justification for a tort claim. “It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.” (Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., 70 NY2d 382, 389 [1987].) Further, this kind of tort action is specifically prohibited by the contract itself. (See, release 13 [releasing defendants from all claims arising out of injury or damage resulting from participation in the show, including but not limited to claims of defamation, invasion of privacy, publicity or personality].)
*409 Accordingly, it is ordered that the defendants’ motion is granted and the action is dismissed in its entirety.